UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 8:18-cr-00229-MSS-CPT

HERMAN AGUELING
_____/

**SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE**

Defendant Herman Agueling, by and through undersigned counsel, pursuant to 18 U.S.C. §§ 3553 and 3661; U.S.S.G. §§ 3B1.2 and 5K2.0; and Rule 32(i) of the Federal Rules of Criminal Procedure, hereby moves this Honorable Court to depart downward from the applicable advisory Sentencing Guidelines range and, in addition, presents the following relevant information for the Court to consider in determining a reasonable sentence to impose in this case:

**Facts and Sentencing Considerations**

Mr. Agueling pled guilty to one count of possession with intent to distribute five kilograms or more of cocaine while onboard a vessel subject to United States jurisdiction. Mr. Agueling was present, along with five other crewmembers, on a small vessel that was transporting cocaine when it was interdicted by the Coast Guard in international waters. Mr. Agueling was a simple crewperson on the boat.

Another similar boat, carrying six crewmembers and a load of cocaine, had been running alongside the boat on which Mr. Agueling was present.

At the time of offense Mr. Agueling was 37 years-old father of four. He had lived his life in a relatively remote area of Ecuador, working as a fisherman. He had only a third-grade education. He possessed no special skills of any kind and served no specific function on the boat.

As soon as he was able to do so, Mr. Agueling notified the Government of his intent to plead guilty. He, thereafter, sought to provide substantial assistance to the investigating authorities and cooperated in the Government's prosecution. Since that time, he has continued to make himself available to the Government

Mr. Agueling's advisory Guidelines range, as calculated by Probation, falls at total offense level 33 and criminal history category I. At that range, the Guidelines suggest a sentence of 135 to 168 months. Mr. Agueling will ask this Court to depart downward from the advisory Guidelines range based on his diminished role in the offense. He will further establish that a downward variance sentence below the advisory Guidelines range would be a sentence that is more than sufficient to satisfy the purposes of sentencing set forth in 18 U.S.C. § 3553(a).

# I. Motion for Downward Departure Based on Mr. Agueling's Diminished Role in the Offense

The facts and circumstances of this case clearly indicate that Mr. Agueling was, at most, a minor participant in the relevant conduct at issue in this case. Mr. Agueling was a simple mariner who performed no special function in the conspiracy, had no equity interest in the cocaine, and had no role in the supply or distribution chains. Based on the role he performed, Mr. Agueling moves this Court to apply the USSG § 3B1.2(b) minor role downward adjustment in calculating his Guidelines range.

## Applicable Law

The standard for assessing the applicability of a role-based downward adjustment is the two-prong test promulgated in *United States v. De Varon*, 175 F.3d 930 (11th Cir. 1999) (en banc). The first prong of *De Varon* calls for an analysis of the defendant's role in the crime in comparison to the relevant conduct for which she is held accountable under the Guidelines. *Id.* at 940-44. In devising this first prong, the Eleventh Circuit reasoned:

> [G]iven the relatively broad definition of relevant conduct under § 1B1.3, some defendants may be held accountable for conduct that is much broader than their specific acts. A conspiracy conviction is the classic example of this phenomenon. In such cases, a defendant's relevant conduct may be coextensive with the entire conspiracy even though her role in that conspiracy was relatively minor. Under these circumstances, a district court may adjust the defendant's sentence for her mitigating role in this broad conspiracy. This adjustment allows a

district court to *impose a sentence that more closely mirrors the defendant's actual conduct, furthering the goals of imposing comparable sentences for similar acts*.

*Id.* at 941 (emphasis added). Accordingly, in the test's second stage, the defendant's role in the relevant conduct for which she is being sentenced is balanced against the role of other participants in that relevant conduct. *Id.* at 944-45. Specific factors relevant to the balancing determination include the amount and value of the drugs attributed to the conspiracy, the defendant's role in planning the conspiracy or in distributing the drugs, the defendant's equity interest in the drugs, and the amount of money the defendant stood to earn had the operation been successful. *Id.* at 945.

In addition to the *De Varon* test, the Sentencing Guidelines provide a definition for both minor and minimal participants. The Guidelines assert that the minor role is available to those not otherwise eligible for a minimal role adjustment, but whom are still "less culpable than most other participants." U.S.S.G. § 3B1.2 cmt., n. 5. In contrast, the minimal role is applicable to those individuals "who are plainly among the least culpable of those involved in the conduct of a group… the defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as minimal participant." U.S.S.G. § 3B1.2 cmt., n. 4.

In November 2015, after conducting a nationwide study into the district-by-district application of the mitigating role downward adjustment, the Sentencing

Commission inserted into section 3B1.2's commentary specific factors for courts to consider in determining if the mitigating role adjustment is appropriate in a specific case:

> (**C**) **Fact-Based Determination.--**The determination whether to apply subsection (a) or subsection (b), or an intermediate adjustment, is based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case. In determining whether to apply subsection (a) or (b), or an intermediate adjustment, the court should consider the following non-exhaustive list of factors:
>
> (**i**) the degree to which the defendant understood the scope and structure of the criminal activity;
> (**ii**) the degree to which the defendant participated in planning or organizing the criminal activity;
> (**iii**) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
> (**iv**) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
> (**v**) the degree to which the defendant stood to benefit from the criminal activity.

U.S.S.G. § 3B1.2 cmt, n. 3. The note goes on to provide, "[f]or example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline." *Id.* It then advises, "[t]he fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative. Such a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity." *Id.*

When providing its reasons for the Amendment, the Sentencing Commission stated that it had conducted "a review of cases involving low-level offenders, analyzed case law, and considered public comment and testimony." USSG § 3B1.2, Hist. Notes – 2015 Amend. In conducting that review, the Commission "found that mitigating role is applied inconsistently and more sparingly than the Commission intended." *Id.* Specifically, the Commission found that "[i]n drug cases, … that mitigating role is applied inconsistently to drug defendants who performed similar low-level functions (and that rates of application vary widely from district to district)." *Id.* In light of those conclusions, the Commission made the changes set forth in the 2015 amendment to 3B1.2, most notably, by adding the factors for consideration set forth above.

Drawing on the then-recent amendments to section 3B1.2, the Eleventh Circuit vacated the sentence of a "drug boat" defendant who had been denied a minor role departure in *United States v. Cruickshank*, 837 F.3d 1182 (2016). In that case, the Eleventh Circuit traced the history of *De Varon* and recently-promulgated Guidelines commentary. The court noted further that both *De Varon* and the Guidelines call for sentencing courts to review cases in which a minor role adjustment is sought on a case-by-case basis. *Id.* at 1193-94. Likewise, the court resolutely held that the mere fact that a defendant is a crewmember on a small ship carrying a very large quantity of controlled substances does not preclude a defendant

from receiving a minor role adjustment. *Id.* at 1194-95. In the end, the Eleventh Circuit vacated the *Cruickshank* defendant's sentence because it found that the District Court may have reasoned that the defendant was ineligible for a minor role adjustment simply because his offense involved a large quantity of drugs. In so holding, the court noted that "*De Varon* stressed the fact-intensive nature of the inquiry, and the sentencing court's role in assessing the totality of the circumstances, where no one factor is 'more important than another.'" *Id.* at 1195 *quoting De Varon*, 175 F.3d at 945. It further recognized that, "[m]oreover, Amendment 794 clarified that a defendant could be considered for a minor-role adjustment in many circumstances, none of which turn on drug quantity." *Id. citing* Amendment 794.

Analysis

A consideration of both the *De Varon* factors and the factors set forth in the applicable Guideline notes demonstrate that Mr. Agueling is a prime example of a defendant who acted in a mitigating role as contemplated under section 3B1.2. Mr. Agueling had no knowledge of the intricacies of this conspiracy, had no role in planning the offense or in distributing the drugs, and had no equity interest in any of the drugs that were being transported. He certainly had no decision-making authority and had no control over the operation. He, likewise, performed no special, or even defined, role in the relevant conduct. Given his lack of education or worldly experience, Mr. Agueling would not even have had the means to perform any special

function within the conspiracy. Mr. Agueling was merely an able body who was on hand to perform remedial tasks during the transportation of the drugs. As such, Mr. Agueling squarely fits within the example provided for in the 2015 amendment to section 3B1.2 as a participant "who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks." USSG 3B1.1 cmt, n. 3. Therefore, based on the Guidelines commentary and the corresponding factors delineated in *De Varon*, Mr. Agueling respectfully requests that this Court decrease his total offense level by two levels to adequately reflect his status as a minor participant in the conspiracy.

## II. <u>Overall Sentencing Considerations and the 18 U.S.C. § 3553(a) Factors</u>

The facts and circumstances surrounding this case do not call for the imposition of a sentence as great as the Guidelines would suggest. The advisory Guidelines range, no matter how it is calculated, will call for the imposition of a substantial prison sentence in this case. The Guidelines, however, "as a matter of administration and to secure nationwide consistency[,]… should be the starting point and the initial benchmark," but are not the only consideration in sentencing. *Gall v. United States*, 552 U.S. 38, 49 (2007). After properly calculating the Guidelines range, the district court must then make an individualized assessment of the case and

consider each of the factors set forth in 18 U.S.C. § 3553(a) before deciding upon a sentence. *Id.* at 49-51. Those factors include:

> (1) the nature and circumstances of the offense;
> (2) the history and characteristics of the defendant;
> (3) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment;
> (4) the need to protect the public; and
> (5) the Guidelines range, as well as
> (6) the kinds of sentences available;
> (7) the need to avoid sentencing disparities among similar defendants who have been found guilty; and
> (8) the need to provide restitution to victims of the offense.

*United States v. Martin*, 455 F.3d 1227, 1236 (11th Cir. 2006) (citations omitted). A consideration of the various 3553(a) factors applicable in the instant case establish that a sentence within the applicable proposed Guidelines range would be a punishment greater than necessary to accomplish the purposes of sentencing set forth in section 3553(a).

Mr. Agueling grew up in extreme poverty and attended school only until the third grade. He is currently unable to read or write. To attempt to provide for his family, Mr. Agueling began working manual labor jobs as soon as he was old enough to physically do so. He continued to work hard, primarily as a fisherman, to provide for his family up until the time he made the poor decision to participate in the instant conspiracy.

*United States v. Agueling*
Sentencing Memorandum
Page 9 of 15

Mr. Agueling's decision to participate in this offense was motivated by his abject poverty and his need to provide for his family. Prior to his participation in the instant offense, Mr. Agueling operated his own fishing boat. In recent years, however, he had two boats seized and stolen by pirates. The Ecuadorian government had reimbursed Mr. Agueling for losses he sustained as a result of the first stolen boat under a government program that reimbursed fishermen who suffered losses at the hands of pirates. In 2017, pirates robbed Mr. Agueling of his second boat. By that time, however, the governmental program had ceased due to a lack of funding. As a result, he did not receive any reimbursement for the second stolen boat. Mr. Agueling, likewise, was without funds to purchase a new boat and suffered great financial losses as a result thereof. While Mr. Agueling knew his actions were wrong, he believed that his participation in the go-fast trip could alleviate his family's extraordinary financial problems. While his motivation does not excuse his conduct, it hopefully sheds light on the good, though ill-thought-out, intentions he had.

Given his age and his life history, Mr. Agueling is in an excellent position to better himself while in the Bureau of Prisons. The few months he has spent incarcerated since his arrest have opened his eyes to the see the errors in his ways and the possibilities that could exist for him. Mr. Agueling is now eager to learn to read and write in English and Spanish and to hopefully learn trades that will allow

him to obtain gainful employment in Ecuador upon his return. Under the circumstances, the imposition of a sentence below the advisory Guidelines range would be sufficient, but not greater than necessary, to reflect the factors to be considered at sentencing pursuant to 18 U.S.C. § 3553.

### III. The Inapplicability of the Mandatory-Minimum Sentencing Provisions

Should the Government decline to file a motion to recognize substantial assistance in this case, Mr. Agueling respectfully submits that he nevertheless should not be subject to the statutory mandatory-minimum penalty that would otherwise be applicable in this case. As set forth in the PSR, Mr. Agueling has satisfied each of the criteria set forth in 18 U.S.C. § 3553(f), the safety-valve statute, and therefore is eligible for a sentence below the mandatory-minimum penalty.

Mr. Agueling respectfully disagrees with the Eleventh Circuit's precedent deciding that § 3553(f) does not apply to defendants convicted under the Maritime Drug Law Enforcement Act ("MDLEA"). *See United States v. Castillo*, 899 F.3d 1208, 1212-13 (11th Cir. 2018) *cert. petition pending* No. 18-374; *United States v. Pertuz-Pertuz*, 679 F.3d 1327, 1329 (11th Cir. 2012). The circuits are currently split on this issue, with the D.C. Circuit recently holding that § 3553(f) applies in MDLEA prosecutions. *See United States v. Mosquera-Murillo*, 902 F.3d 285 (D.C. Cir. Aug. 24, 2018).

The safety-valve statute applies to "an offense under" five listed statutes, including 21 U.S.C. § 960. *See* 18 U.S.C. § 3553(f). As the D.C. Circuit concluded, a defendant convicted under the MDLEA is also convicted of an offense under 21 U.S.C. § 960. *Id.* at 292-96. The D.C. Circuit explained:

> In particular, the MDLEA supplies the elements that make the defendants' conduct unlawful: (i) conspiring, (ii) to intentionally or knowingly, (iii) distribute or possess with intent to distribute, (iv) a controlled substance, (v) while on board a vessel. 46 U.S.C. §§ 70503(a)(1), 70506(b). Meanwhile, § 960 supplies the offense elements of drug-type and drug-quantity—5 or more kilograms of cocaine, and 100 or more kilograms of marijuana—which bear on the degree of culpability and determine the statutory sentencing range. 21 U.S.C. § 960(b)(1)(B), (b)(2)(G). In that light, the defendants' crime is "an offense under" both the MDLEA and § 960, drawing offense elements from each.

*Id.* at 293. The D.C. Circuit further observed that its statutory interpretation is consistent with Supreme Court precedent holding that the drug type and quantity are elements of the offense. *Id.* at 293 (citing *Apprendi v. New Jersey*, 530 U.S. 466 (2000); *Alleyne v. United States*, 570 U.S. 99 (2013) (plurality)). The D.C. Circuit noted that, in that case, the defendants' indictments, plea agreements, and judgments reflected that the defendants were convicted under both the MDLEA and § 960. *Id.* at 293-94. Based upon its review of the statutory text and history, the D.C. Circuit concluded, in express disagreement with the Ninth and Eleventh Circuits, that § 3553(f) applies to MDLEA convictions. *Id.* at 295-96 *citing United States v. Pertuz-*

*Pertuz*, 679 F.3d 1327, 1329 (11th Cir. 2012) (per curiam); *United States v. Gamboa-Cardenas*, 508 F.3d 491, 496 (9th Cir. 2007).

The Government has reported that it will not seek rehearing or certiorari from the D.C. Circuit's decision in *Mosquera-Murillo*. *See* Unopposed Motion to Expedite Issuance of the Mandate, *United States v. Mosquera-Murillo*, Nos. 16-3096, 16-3097, 16-3098 (D.C. Cir. Sept. 13, 2018). As a result, defendants within the D.C. Circuit's jurisdiction who have satisfied each of the criteria for safety-valve eligibility under § 3553(f) will be eligible for a sentence below the mandatory-minimum penalty, while similarly situated defendants within the Eleventh Circuit's jurisdiction will not. Consequently, subjecting Mr. Agueling to the statutory mandatory minimum sentencing provisions would result in an undue sentencing disparity and a violation of his due process and equal protection rights.

Mr. Agueling, like the *Mosquera-Murillo* defendants, was convicted of "an offense under" § 960. Because he has satisfied each of the criteria in § 3553(f), Mr. Agueling respectfully submits that, consistent with the reasoning of the D.C. Circuit, he is eligible for a sentence below the mandatory-minimum penalty.

## CONCLUSION

Based on the foregoing, Mr. Agueling respectfully requests that this Honorable Court depart downward from the proposed advisory Guidelines range based on the reasons set forth above and that it, likewise, consider the unique facts and circumstances of this case and impose a downward variance sentence below the adjusted Guidelines range.

Respectfully Submitted,

*s/ J. Jervis Wise*
J. JERVIS WISE, ESQ.
BRUNVAND WISE, P.A.
615 Turner Street
Clearwater, FL 33756
Telephone: 727-446-7505
Facsimile: 727-446-8147
E-Mail: jervis@acquitter.com
Florida Bar # 0019181
CJA Counsel for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 14, 2018, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to all counsel of record.

*s/ J. Jervis Wise*
J. JERVIS WISE, ESQ.
BRUNVAND WISE, P.A.
615 Turner Street
Clearwater, FL 33756
Telephone: 727-446-7505
Facsimile: 727-446-8147
E-Mail: jervis@acquitter.com
Florida Bar # 0019181
CJA Counsel for Defendant